Opinion by JUDGE WEBB
¶ 1 Everyone agrees that a criminal defendant has a constitutional right to conflict-free counsel. But does this right require a post-conviction court to find that an actual conflict of interest exists whenever trial counsel pursued a strategy, over a defendant's objection, that practically if not legally foreclosed the defendant from exercising his constitutional right to testify?
¶ 2 Chaddrick Levil Thomas appeals the denial, after an evidentiary hearing, of his Crim. P. 35(c) motion alleging that his trial counsel rendered ineffective assistance by pursuing a self-defense theory; once he told counsel that he opposed this theory because he wanted to testify to his innocence, an actual conflict of interest arose; and from that conflict prejudice must be presumed. The post-conviction court ruled that because this disagreement was a matter of strategy, it did not constitute an actual conflict of interest, and Thomas was required to show prejudice. Then the court denied the motion because even assuming that counsel had been ineffective in relying on self-defense, Thomas had not shown prejudice.
¶ 3 Resolving a novel question in Colorado, we agree with the trial court that no actual conflict of interest arose from this strategic disagreement and Thomas was required to show prejudice. Because he failed to do so, we affirm.
I. Background
¶ 4 Thomas has had three prior appeals. In People v. Thomas, 2004 WL 2406756 (Colo. App. No. 03CA0309, Oct. 28, 2004) (not published pursuant to C.A.R. 35(f) ) ( Thomas I ), the division reversed his second degree murder conviction for instructional error. Counsel had advanced a theory of actual innocence; Thomas did not testify. On retrial, the same counsel advanced a theory of *126 self-defense; again, Thomas did not testify.[1] In People v. Thomas, 2007 WL 4260322 (Colo. App. No. 05CA2510, Dec. 6, 2007) (not published pursuant to C.A.R. 35(f) ) ( Thomas II ), the division affirmed his conviction for the same offense.
¶ 5 Then, in People v. Thomas, 2011 WL 2437726 (Colo.App. No. 09CA1203, June 3, 2011) (not published pursuant to C.A.R. 35(f) ) ( Thomas III ), the division reversed the post-conviction court's summary denial of his Crim. P. 35(c) claim that he had received ineffective assistance of trial counsel because his counsel's self-defense theory "impeded his right to testify" that he had not shot the victim. Citing People v. Bergerud , 223 P.3d 686 (Colo. 2010), the division remanded for an evidentiary hearing. It explained that Thomas's "allegations, if true, would provide a basis for the court to conclude that defense counsel's strategic choice of theory usurped defendant's choice about whether to testify."
¶ 6 At the remand hearing, Thomas and his two trial attorneys testified similarly that before the second trial he had opposed self-defense, and throughout the trial he remained consistent that he wanted to testify to his actual innocence; his attorneys had told him that choosing self-defense was their prerogative; and they told him that once they advanced this defense in opening statement, his testifying to actual innocence would destroy the credibility of the defense. Still, Thomas and his attorneys conceded that this disagreement had not been raised with the trial court before, during, or even after trial. The post-conviction court again denied Thomas relief, this time in a detailed, written order.
II. Standard of Review
¶ 7 The post-conviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. People v. Washington, 2014 COA 41, ¶ 17, 345 P.3d 950. When the evidence in the record supports the court's findings, we will not disturb them on appeal. Id . But we review the court's legal conclusions de novo. Id . And, as relevant here, "[w]e review de novo the trial court's determination of whether an actual conflict existed." People v. Hagos, 250 P.3d 596, 613 (Colo. App. 2009).
III. The Post-Conviction Court Did Not Err in Denying Thomas's Crim. P. 35(c) Motion Based on His Failure to Show Prejudice
¶ 8 On remand, Thomas argued that trial counsel's self-defense strategy usurped his constitutional right to testify because, if not foreclosed by this strategy, he would have testified that he had not shot the victim. His expert testified that presenting this strategy was below the standard of care, and that because counsel had proceeded with self-defense despite knowing of Thomas's desire to testify, an actual conflict of interest with counsel arose. Thomas asserted that from this actual conflict, prejudice must be presumed.
¶ 9 The post-conviction court rejected this actual conflict of interest argument for lack of supporting legal authority. The court held that under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Thomas was required to show prejudice, but "[n]o evidence was presented at the hearing which would support a finding that but for the alleged deficient performance by counsel that the outcome would have been different." Then it concluded, "[e]ven assuming arguendo that trial counsel's strategy decision infringed on the defendant's decision whether to testify, absent a showing of prejudice a new trial is not warranted."
A. Law
¶ 10 A criminal defendant is constitutionally entitled to effective assistance of counsel. Strickland, 466 U.S. at 686, 104 S.Ct. 2052. For most ineffective assistance claims, a defendant must prove both deficient performance and prejudice. Id. at 687, 104 S.Ct. 2052. If the defendant fails to establish either prong of the test, the post-conviction court may reject the claim on that basis *127 alone. People v. Vieyra, 169 P.3d 205, 209 (Colo. App. 2007).
¶ 11 The first prong of the Strickland test requires the defendant to show, considering the totality of the circumstances, that his lawyer's assistance was outside prevailing professional norms. People v. Walton, 167 P.3d 163, 167 (Colo. App. 2007). Under the second prong, a defendant must show a reasonable probability that, absent the alleged error, the result of the proceeding would have been different. Ardolino v. People, 69 P.3d 73, 76 (Colo. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
¶ 12 Even so, "[i]n certain Sixth Amendment contexts, prejudice is presumed." Id . at 692, 104 S.Ct. 2052. For example, no additional showing of prejudice is required if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing" because counsel is either "totally absent, or prevented from assisting the accused during a critical stage of the proceeding." United States v. Cronic, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ; see People v. Robles, 74 P.3d 437, 439 (Colo. App. 2003) ("[T]he Strickland prejudice test does not apply at all when an ineffective assistance of counsel claim arises because of the actual or constructive total denial of the assistance of counsel."). And as relevant here, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." Cuyler v. Sullivan, 446 U.S. 335, 345-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
B. Thomas's Disagreement with Trial Counsel Over the Self-Defense Theory Did Not Create an Actual Conflict of Interest
¶ 13 Thomas primarily relies on Bergerud, as did the division in Thomas III . But a close look shows that Bergerud does not support Thomas's position on an actual conflict of interest having arisen from his trial counsel's decision to proceed with self-defense, contrary to his wishes.[2]
¶ 14 In Bergerud, the defendant moved for new counsel immediately after opening statements, asserting that his counsel had "refused to develop and present his defense as he requested." 223 P.3d at 692. When the trial court denied his motion, the defendant elected to proceed pro se and was convicted. The supreme court considered whether the trial court had erred in denying the motion. It framed this issue as whether defendant's "waiver of his right to counsel was knowing, intelligent, and voluntary," or if he had been forced "to choose between his right to counsel and protecting other rights associated with his defense, such as the choice to testify or enter a plea of not guilty." Id . at 691.
¶ 15 The court reaffirmed that "defense counsel is captain of the ship" for strategy decisions. Id . at 693 (internal quotation marks omitted). Yet, "three important sources of limitations on a defense attorney's ability to direct the course of a trial" exist. Id . One limitation is that "certain constitutional rights are given directly to the defendant and cannot be wielded by an attorney representative." Id . Thus, "[d]ecisions such as ... whether to testify ... are so fundamental to a defense that they cannot be made by defense counsel, but rather must be made by the defendant himself." Id . at 693-94. And while a defendant cannot "mandate, through his desire to testify, that his attorneys adopt specific trial strategies," likewise "defense counsel cannot, through their trial actions, reduce their client's constitutional right to a nullity." Id . at 702.
¶ 16 But contrary to Thomas's argument, Bergerud did not hold that an actual conflict *128 of interest arises whenever trial counsel adopts a strategy which may impede a defendant from exercising his right to testify. Instead, the supreme court explained:
When describing the situation to the trial court, [the defendant] repeatedly stated that he had a "conflict of interest" with his attorneys. However, although the gravamen of his complaint is that he was unable to effectively communicate with his attorneys or convince them to pursue his desired strategies-and not that his attorneys labored under a conflict of interest because of their obligations to other clients-we here discuss the disagreement by its proper name.
Id . at 704 n.14. Thus, the defendant's "complaint to the trial court about his attorney's conduct amount[ed] to an allegation that communication with his court-appointed counsel had completely broken down." Id . at 703-04.
¶ 17 Thomas submitted a post-hearing brief on Bergerud, but he did not assert a complete breakdown in communication. Nor does he do so on appeal. For these reasons, we decline to address the Attorney General's assertion that Bergerud should not be applied retroactively.
¶ 18 Instead, Thomas continues to rely solely on an alleged actual conflict of interest. Yet, he fails to cite authority, nor have we found any, holding that such an actual conflict arises when trial counsel pursues a strategy that would impede a defendant's right to testify, even over the defendant's protest. This lack of authority is unsurprising because, in the context of ineffective assistance claims, " '[u]ntil ... a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.' " Mickens v. Taylor, 535 U.S. 162, 176, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (quoting Sullivan, 446 U.S. at 350, 100 S.Ct. 1708 ) (emphasis in original); accord People v. Newmiller, 2014 COA 84, ¶ 65, 338 P.3d 459 ("A conflict of interest exists when the attorney's ability to represent a client is materially limited by the attorney's own interests." (internal quotation marks omitted)).[3]
¶ 19 Consistent with these formulations, to prove an actual conflict of interest, "the defendant must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict." People v. Stroud, 2014 COA 58, ¶ 40, 356 P.3d 903 (internal quotation marks omitted). But Thomas fails to identify any such conflicting duties or interests that burdened his trial counsel in deciding to advance self-defense at the second trial. And worse for his actual conflict argument, at the Crim. P. 35(c) hearing both counsel testified to their reasons for having chosen self-defense, after actual innocence had failed at the first trial, including interviews of jurors who had deliberated in the first trial, evidence that Thomas had shot the victim, and evidence that the victim had fired first.
¶ 20 Absent any such conflicting duties or interests, ineffective assistance of counsel claims that arise from loss of a defendant's right to testify are evaluated under both prongs of Strickland . People v. Naranjo, 840 P.2d 319, 324 (Colo. 1992) (applying Strickland to a claim that counsel denied defendant his right to testify by failing to inform him of that right).[4] Thus, the post- *129 conviction court correctly held that Thomas was required to show prejudice.
¶ 21 Given all this, does West v. People, 2015 CO 5, 341 P.3d 520, decided long after the post-conviction court ruled and after appellate briefing closed, now require a different conclusion, or at least a remand for further proceedings? True, in West the court softened the Strickland outcome-determinative approach to prejudice applied by the post-conviction court. For certain actual conflicts of interests, the supreme court adopted a three-part test to measure adverse effect: "some plausible alternative defense strategy or tactic might have been pursued"; the alternative strategy was "objectively reasonable"; and "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Id. at ¶¶ 48, 49 (internal quotation marks omitted).[5]
Even so, that test does not apply here, for three reasons.
• First, West dealt with "other loyalties or interests" arising from counsel's simultaneous and successive representation of trial witnesses against defendants-the type of actual conflict of interest discussed in Mickens and Sullivan -not a dispute over a strategy at odds with a defendant's right to testify.
• Second, because the impact of a defendant's failure to testify can be measured independently of "the attorney's interpretations of his decisions amid the conflict," such a strategic disagreement does not implicate the difficulties of proving adverse effect recognized in West. Id . at ¶ 51.
• Third, in West, ¶ 36 n.8, the supreme court left "for another day" what standard would "govern claims of ineffectiveness based on alleged conflicts resulting from other forms of divided loyalty (for example, counsel's personal or financial interests, including employment concerns, romantic entanglements, and fear of antagonizing the trial judge)."
C. Thomas Failed to Show Prejudice
¶ 22 The record supports the post-conviction court's finding that Thomas made no showing of prejudice. Instead of even attempting to do so, he argued in his post-hearing brief that an "actual conflict existed ... and this conflict itself calls into question the fairness of the entirety of the proceedings and on its own, provides the prejudice prong of the Strickland test." Undaunted, he advances the same argument on appeal.
¶ 23 We will assume-as did the post-conviction court-that counsel's decision to proceed with self-defense constituted deficient performance. Regardless, Thomas's claim still fails under the second prong of Strickland . See People v. Rivas, 77 P.3d 882, 893 (Colo. App. 2003) (if the defendant is unable to establish prejudice, the court need not determine whether counsel was deficient); see also *130 People v. Hayes , 229 Cal.App.3d 1226, 280 Cal.Rptr. 578, 584 (1991) ("Because the record wholly lacks a showing that had [the defendant] been permitted to present his testimony there is a reasonable probability of a more favorable outcome ... [the defendant] has failed to establish ineffective assistance of counsel.").
IV. Conclusion
¶ 24 The order is affirmed.
JUDGE DAILEY and JUDGE RICHMAN concur.

Thomas received Curtis advisements in both trials. He does not contest the adequacy of either advisement.

To the extent that Thomas III could be read as having held to the contrary, the law of the case doctrine does not bind one division of this court to an earlier decision of another division, even in the same case. See Vashone-Caruso v. Suthers, 29 P.3d 339, 342-43 (Colo. App. 2001) ("[W]hen the law of the case doctrine is applied to the decisions of an equal court or a different division of the same court, its main purpose is efficiency of disposition. Therefore, a court, in its discretion, may decline to apply the doctrine if it determines that the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice.").

See also Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir. 2008) ("[T]he Supreme Court cases make clear" that an actual conflict of interest refers to "legal conflicts of interest-an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client."); Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007) (" '[C]onflict of interest' is a term of art in the law.... Ordinarily, it denotes representation of multiple conflicting interests.... We can find no clearly established Supreme Court precedent holding that this kind of [strategic] disagreement [with counsel] amounts to an actual conflict of interest.").

See also United States v. Hubbard, 638 F.3d 866, 869 (8th Cir. 2011) (claim that counsel told defendant the trial court "would not allow him to testify in his own defense" analyzed under Strickland ); Palmer v. Hendricks, 592 F.3d 386, 397 (3d Cir. 2010) ("[E]very authority we are aware of that has addressed the matter of counsel's failure to advise a client of the right to testify has done so under Strickland's two-prong framework."); Matylinsky v. Budge, 577 F.3d 1083, 1097 (9th Cir. 2009) ("The Strickland standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify."); Owens v. United States, 483 F.3d 48, 57-59 (1st Cir. 2007) (applying both prongs of Strickland to an ineffective assistance of counsel claim that counsel failed to inform the defendant of his right to testify); Cannon v. Mullin , 383 F.3d 1152, 1170 (10th Cir. 2004) (claim that "counsel would not allow [the defendant] to take the stand in his own defense, despite his unequivocal expression of the desire to do so" analyzed under both prongs of Strickland); Sayre v. Anderson , 238 F.3d 631, 634 (5th Cir. 2001) ("[The defendant] contends only that his attorney interfered with his right to testify, not that the state trial court (or prosecutor) did so."); United States v. Brown , 217 F.3d 247, 258-59 (5th Cir. 2000) (claim that counsel "interfered" with the right to testify analyzed under both prongs of Strickland); Sexton v. French , 163 F.3d 874, 882 (4th Cir. 1998) (defendant's claim that "trial counsel failed to inform him of his right to testify or ... forced him to testify must satisfy the two-prong test established in Strickland"); Brown v. Artuz , 124 F.3d 73, 74 (2d Cir. 1997) (applying both prongs of Strickland "to assess a defendant's claim that defense counsel rendered ineffective assistance by preventing him from testifying or at least failing to advise him concerning his right to testify").

We do not foreclose the viability of an ineffective assistance claim where an attorney's "other loyalties or interests" conflicted with a strategy that would allow a defendant to testify if such a strategy was plausible, and advancing it was objectively reasonable. But the linchpin of such a claim would be the attorney's "other loyalties or interests," not the defendant's constitutional right to testify.